**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHIRLEY SHERIDAN et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **NGK METALS CORPORATION et al.,** | : | |
| **Defendants** | : | **No. 06-5510** |

**M E M O R A N D U M**

PRATTER, J.                                                                    MAY 21, 2008

**FACTUAL AND PROCEDURAL BACKGROUND**

The proposed Plaintiff class seeks to establish a fund to provide the costs of medical

monitoring to a class of residents of Reading, Pennsylvania who, Plaintiffs allege, were exposed

to beryllium emitted into the air as a result of the Defendants' negligence.  Plaintiffs argue that

each member of the proposed class has an increased risk of developing an adverse

beryllium-related health effect due to his or her exposure to beryllium particulate released from a

manufacturing facility in Reading (the "Reading Plant").  From 1986 through 2001, the Reading

Plant was owned and operated by defendant NGK Metals Corporation.  Prior to 1986, for a

period of at least 50 years, the Reading Plant was owned and operated by defendant Cabot

Corporation ("Cabot").  According to the Plaintiffs, members of the proposed class resided

and/or regularly worked in close proximity to the Reading Plant at some time during the period

from 1950 to 2000.

Defendant Spotts, Stevens & McCoy ("Spotts, Stevens") is an engineering firm that,

according to the Amended Complaint, "was involved with and responsible for testing, sampling,

analyzing, and monitoring the air quality and levels of beryllium at the Reading Plant."  (Am.

Compl. ¶ 21.)  Shortly after this case was filed, Spotts, Stevens moved to dismiss the Plaintiffs'

initial Complaint, and on November 14, 2007 the Court granted the Spotts, Stevens motion.  The Court found that Plaintiffs' had failed to allege that Spotts, Stevens owed a legal duty to the Plaintiffs that would support the negligence/medical monitoring claim.  However, per Plaintiffs' request, the Court granted Plaintiffs leave to amend their Complaint to "plead with sufficient clarity that they are proceeding under § 324A of the Restatement (Second) of Torts."  Sheridan v. NGK N. Am., Inc., No. 06-5510, 2007 U.S. Dist. LEXIS 84424, at *8 (E.D. Pa. Nov. 14, 2007).  Thereafter, Plaintiffs filed an Amended Complaint alleging a specific cause of action for medical monitoring under Section 324A against Spotts, Stevens, in addition to the common law negligence/medical monitoring claim against NGK Metals and Cabot.

Presently before the Court are Spotts, Stevens's Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Docket No. 76), and Cabot Corporation's Motion for Judgment on the Pleadings (Docket No. 80).  Plaintiffs oppose both of these motions.  The Court presided over oral argument on the defense motions on March 25, 2008.  For the reasons discussed below, both defense motions must be granted.

**LEGAL STANDARD**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as has been presented by Cabot Corporation may be brought at the close of the pleadings, when no material issue of fact remains in dispute and the dispute can be resolved based upon the pleadings and facts upon which the Court may take judicial notice.  Fed. R. Civ. P. 12(c). The Court will apply the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

A Rule 12(b)(6) motion to dismiss, such as presented by Spotts, Stevens, tests the

2

sufficiency of a complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Rule 8 of the Federal

Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests," Conley, 355 U.S. at 47.  While a

complaint need not contain detailed factual allegations, the plaintiff must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).

Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative

level . . . ." Id. at 1965 (citations omitted).

　　　　To make such a determination, courts "must only consider those facts alleged in the

complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855,

859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also

Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the

complaint are true (even if doubtful in fact)").  The Court must also accept as true all reasonable

inferences that may be drawn from the allegations, and view those facts and inferences in the

light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir.

1989).  The Court, however, need not accept as true "unsupported conclusions and unwarranted

inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000)

(citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the

plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d.

902, 906 (3d Cir. 1997).

　　　　To evaluate a motion to dismiss, the Court may consider the allegations contained in the

complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**DISCUSSION**

**I.    SPOTTS, STEVENS & McCOY, INC.'S MOTION TO DISMISS**

Plaintiffs' Amended Class Action Complaint alleges one count of "Negligence Medical Monitoring" against NGK Metals and Cabot, and one count of medical monitoring under Section 324A of the Restatement (Second) of Torts against Spotts, Stevens.[1]  Spotts, Stevens once again has moved to dismiss Plaintiffs' claims under Rule 12(b)(6), arguing that the Amended Complaint still fails to allege that Spotts, Stevens owes a legal duty to the Plaintiffs or that Spotts, Stevens has breached any such duty.  Spotts, Stevens also claims the Amended Complaint does not plead facts from which a duty may be inferred.

---

[1] Under Pennsylvania law, a plaintiff must prove the following elements to prevail on a common law medical-monitoring claim:

1.    exposure greater than normal background levels;
2.    to a proven hazardous substance;
3.    caused by the defendant's negligence;
4.    as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;
5.    a monitoring procedure exists that makes the early detection of the disease possible;
6.    the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and
7.    the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

Redland Soccer Club v. Dep't of the Army, 696 A.2d 137, 145-46 (Pa. 1997).  As the third element listed above indicates, negligence is an essential component of a medical-monitoring claim, and an action in negligence is premised upon the existence of a duty owed by one party to another.  Knoud v. Galante, 696 A.2d 854 (Pa. Super. 1997).

Section 324A – Liability to Third Person for Negligent Performance of Undertaking – of

the Restatement (Second) of Torts states:

> One who undertakes, gratuitously or for consideration, to render services to another
> which he should recognize as necessary for the protection of a third person or his
> things, is subject to liability to the third person for physical harm resulting from his
> failure to exercise reasonable care to protect his undertaking, if
> > (a) his failure to exercise reasonable care increases the risk of such
> > harm, or
> > (b) he has undertaken to perform a duty owed by the other to the third
> > person, or
> > (c) the harm is suffered because of reliance of the other or the third
> > person upon the undertaking.

Restatement (Second) of Torts § 324A (1977).  Pennsylvania has adopted Section 324A.  See

Cantwell v. Allegheny County, 506 Pa. 35, 40, 483 A.2d 1350, 1353 (1984).

In order to be held liable under Section 324A, a defendant must have undertaken to

perform a specific task, and must have performed that "undertaking" negligently.  See Patentas v.

United States, 687 F.2d 707, 716 (3d Cir. 1982) (stating that Section 324A, also known as "the

good samaritan rule," requires that "the defendant specifically has undertaken to perform the task

that he or she is charged with having performed negligently"); Blessing v. United States, 447 F.

Supp. 1160, 1188-89 (E.D. Pa. 1978); Daraio v. Carey Can., Inc., 309 F. Supp. 2d 706, 710 (E.D.

Pa. 2004).  "The foundational requirement of [Section 324A] is that in order for liability to be

imposed upon the actor, he must specifically have undertaken to perform the task that he is

charged with having performed negligently, for without the actual assumption of the undertaking

there can be no correlative legal duty to perform that undertaking carefully."  Blessing, 447 F.

Supp. at 1188-89 (emphasis added).  Stated differently, absent any evidence that a defendant

assumed an affirmative duty, there can be no liability for negligently performing that duty.  See

5

Wenrick v. Schloemann-Siemag Aktiengesellschaft, 564 A.2d 1244, 1248 (Pa. 1989);

LaFountain v. Webb Indus. Corp., No. 89-6069, 1991 U.S. Dist. LEXIS 4043, at *7-8 (E.D. Pa.

Mar. 27, 1991); Sacks v. Thomas Jefferson Univ. Hosp., 684 F. Supp. 858, 860 (E.D. Pa. 1988);

Blessing , 447 F. Supp. at 1188-89; W. Union Tel. Co. v. N.C. Direnzi Inc., 442 F. Supp. 1, 4

(E.D. Pa. 1977).[2]

> In the Section 324A context, the Pennsylvania Supreme Court has stated:

> Before a person may be subject to liability for failing to act in a given situation, it must be established that the person has a duty to act; if no care is due, it is meaningless to assert that a person failed to act with due care. Certain relations between parties may give rise to such a duty. Although each person may be said to have a relationship with the world at large that creates a duty to act where his own conduct places others in peril, Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act.

Wenrick, 564 A.2d at 1248.

In Evans v. Liberty Mutual Insurance Co., 398 F.2d 665, 666-67 (3d Cir. 1968), the Third

Circuit Court of Appeals examined the "scope" of the undertaking necessary to support Section

324A liability for a negligently performed inspection such as is claimed against Spotts, Stevens

here.  The Evans plaintiff was injured in the course of his employment while attempting to

dismantle a cutting machine.  The defendant, the employer's workers' compensation carrier, had

made selective inspections of the employer's plant but had never inspected the cutting machine.

The court concluded that the plaintiff failed to show that the defendant had undertaken to inspect

---

[2] In Gunsalus v. Celotex Corp., 674 F. Supp. 1149, 1156 (E.D. Pa. 1987), the court stated that a plaintiff proceeding under Section 324A "must establish the underlying elements of an action in negligence: a cognizable duty or obligation requiring the actor to conform to a certain standard of conduct; a failure to conform to the standard required; a causal connection between the conduct and the resulting injury; and actual loss or damage resulting to the interests of another." Id.  "[Section 324A] cannot be invoked to create a duty where one does not exist."  Id.

the specific instrument that caused the injury, to inspect the entire plant of which that instrument was a part, that the defendant's actions increased the plaintiff's risk of harm, or that the plaintiff relied on an inspection.  Id. at 667.  Accordingly, the court found that the plaintiff employee could not recover under Section 324A.  Id.  Citing  Evans, the Third Circuit Court of Appeals later reiterated that "the scope of a good samaritan's duty is measured by the scope of his or her undertaking."  Patentas, 687 F.2d at 716.  If a defendant has not undertaken the duty to perform the task at hand, it cannot be held liable under Section 324A for failing to perform that task.

In this case, Plaintiffs' Amended Complaint, like their original Complaint, alleges that the Defendant manufacturing plants – NGK Metals Corporation and Cabot Corporation – paid Spotts, Stevens to "test, sample, analyze and monitor the air quality and levels of beryllium emitted from the Reading Plant" (Compl. ¶ 58); that Spotts, Stevens "was responsible for advising [those Defendants] with regard to the air quality and for informing and/or warning said defendants of the results of air sampling and testing" (Compl. ¶ 58); and that "a duty existed for [Spotts, Stevens] to act with reasonable care and prevent any increased risk of harm to the plaintiffs and the proposed class herein" (Am. Compl. ¶ 61).  Based on Spotts, Stevens's "testing, sampling, analyzing, and monitoring" air quality and accordingly "advising," "informing and/or warning" the Defendant manufacturers, Plaintiffs allege that Spotts, Stevens was negligent, and is liable to them under Section 324A.  Plaintiffs' Amended Complaint alleges that Section 324A "imposes a duty upon the service provider to perform [the services] in a manner with reasonable care and which does not increase the risk of harm to those the services are intended to protect" (Am. Compl. ¶ 60), and that Spotts, Stevens "wholly failed to advise the community, the members of a class herein, and/or Federal and/or State regulators of this

7

extremely dangerous condition and thereby breached its duty under § 324A." (Am. Compl. ¶ 63.)

Citing Evans, as well as other cases, Spotts, Stevens urges dismissal of Plaintiffs' Amended Complaint because the Plaintiffs failed to allege that Spotts, Stevens undertook the specific duty to warn the Plaintiffs, or that Spotts, Stevens negligently performed its undertaken tasks. Spotts, Stevens argues that in order to be held liable under Section 324A, a defendant must expressly undertake to perform certain tasks, and that in this case, it never expressly undertook to a "duty to warn" the Plaintiffs of the harmful beryllium exposures at the Reading Plant. At oral argument, Plaintiffs essentially conceded the latter point, acknowledging that Spotts, Stevens never expressly undertook a duty to warn the public at large about beryllium emissions at the Reading Plant.[3] Instead, Plaintiffs argue that Section 324A does not require a party to expressly undertake a specific duty but creates an "implied" or "derivative" duty when a defendant "has undertaken to perform a duty owed by the other to the third person." Restatement (Second) of Torts § 324A(b). Plaintiffs contend that the "third person" in this case is the general public, or, more specifically, the class of Plaintiffs who reside or work near the Reading Plant. Plaintiffs argue that, in this case, Spotts, Stevens undertook to test the beryllium conditions at the Reading Plant to ensure compliance with standards for beryllium emissions established by state and federal regulators, including the U.S. Environmental Protection Agency ("EPA") (Compl. ¶ 62), and that these emissions standards "were specifically and solely designed to protect third

_____

[3] During oral argument on Spotts, Stevens's motion, Plaintiffs' counsel was candid in stating that: "We agree it's not an express duty. We agree, if one were to look at the purchase order or contract that [Spotts, Stevens] signed, that nowhere will one find that they agree to protect the public . . . ." (Hearing Tr. 20:1-5, March 25, 2008.)

persons, including the members of the proposed class herein . . . ."  (Compl. ¶ 61.)  Because these regulations were designed to protect the public, and Spotts, Stevens's services were intended to prevent harm to the public, Plaintiffs argue that Spotts, Stevens owes a duty under Section 324A to the public at large, including the Plaintiff class in this case.

Plaintiffs have not cited a single case, and the Court has not found any case, where a court has held that Section 324A gives rise to an "implicit" or "derivative" duty that stems from another, related duty undertaken by a defendant.  In contrast, Spotts, Stevens has cited a number of cases, discussed above, all supporting the principle that for Section 324A liability to attach, the defendant must have expressly undertaken a duty to perform a specific task <u>and</u> must have negligently performed <u>that task</u>.

In this case, Plaintiffs allege (and Spotts, Stevens does not deny) that Spotts, Stevens undertook a duty to "test, sample, analyze and monitor the air quality and levels of beryllium emitted from the Reading Plant" and to report the results of those tests to the owner and operator of the Reading Plant, i.e., to Cabot Corporation or NGK Metals Corporation, depending on the date in question.  However, the Amended Complaint does **<u>not</u>** allege that Spotts, Stevens was negligent in performing the testing, sampling, analyzing or monitoring of the air quality in the Reading Plant, or that Spotts, Stevens failed to report, or was negligent in reporting, the results of its research <u>to the plant owners</u>.  Although the Amended Complaint alleges that Spotts, Stevens was "negligent" and "failed to exercise reasonable care," the Amended Complaint fails to allege that Spotts, Stevens breached any duty that it actually undertook and owed to the Plaintiffs.  Even read liberally, and as more fully expounded upon during oral argument, the Amended Complaint alleges, and Plaintiffs argue, that Spotts, Stevens breached a "duty to warn" the Plaintiffs of the

dangerous beryllium emissions from the Reading Plant.  However, the Amended Complaint does

not allege that Spotts, Stevens actually undertook a duty to warn the Plaintiffs, and does not

allege any circumstances under which such a duty, as a matter of law, could arise "implicitly" or

"derivatively."

Plaintiffs only cite one case, Cantwell, supra, in support of the notion that Spotts,

Stevens's duty arose "implicitly."  In Cantwell, the Supreme Court of Pennsylvania stated:

> In order to state a cause of action under § 324A, a complaint must contain factual
> allegations sufficient to establish the legal requirement that the defendant has
> undertaken "to render services to another which he should recognize as necessary for
> the protection of a third person" (in this case, the plaintiff, appellee). This is
> essentially a requirement of foreseeability.

483 A.2d at 1353-54.  Plaintiffs seize the principle of "foreseeability" discussed in Cantwell, and

argue that because Spotts, Stevens's tasks (to test and sample beryllium) were mandated by

federal and state regulations designed to protect the public, injuries to the public - in the event

beryllium emissions exceeded accepted levels - were "foreseeable" to Spotts, Stevens.

However, as the Third Circuit Court of Appeals stated, admittedly not in the Section

324A context, "[f]oreseeability of injury . . . in the absence of a duty to prevent that injury, is an

insufficient basis on which to rest liability."  Breiner v. C&P Home Builders, Inc., 536 F.2d 27,

31 (3d Cir. 1976) (citing Evans, 398 F.2d at 667)).  Stated differently, even in the Section 324A

context, "foreseeability" does not excuse the requirement in a negligence action that a plaintiff

must prove the existence of a legal "duty" owed by the defendant to the plaintiff in order for the

plaintiff to recover.  Absent a duty owed to the Plaintiffs here, the Court need not reach the

question of whether Plaintiffs' alleged injuries were "foreseeable."

Moreover, "in order to prevail under § 324A, a plaintiff must establish more than the fact

that a defendant negligently performed a duty owed to another which he or she should have foreseen as necessary to the safety of another." Blewitt v. Man Roland, Inc., 168 F. Supp. 2d 466, 470 (E.D. Pa. 2001) (citing Santillo v. Chambersburg Eng'g Co., 603 F. Supp. 211, 214 (E.D. Pa. 1985)).  A plaintiff also must show that the requirements of one of the subsections of Section 324A have been met.  Id.  Subsection (a) requires that the activities of the defendant must have somehow increased the risk of harm to the plaintiff.  Id.[4]  Under subsection (b), "the relationship involved must be one that has given rise to a duty to use reasonable care."  Id.  In that regard, courts have found that "[t]he mere making of safety recommendations does not establish such a duty nor is mere knowledge of a dangerous situation, even by one who has the ability to intervene, sufficient to create a duty to act."  Id.[5]  Finally, under subsection (c), a plaintiff must show that the harm was suffered because of the plaintiff's reliance, or the reliance of the person in privity with the offending party "upon the undertaking."  Restatement (Second) of Torts § 324A(c) (emphasis added).  As the court of appeals has held, "knowledge alone [does] not suffice to state a claim for detrimental reliance."  Patentas, 687 F.2d at 717.

Plaintiffs here rely on all three subsections of Section 324A, although they emphasize subsections (b) and (c).  (See Hearing Tr. 19:18-21, Mar. 25, 2008.)  Citing subsection (a), Plaintiffs allege that Spotts, Stevens's negligence increased the risk of harm to the Plaintiffs.

---

[4] The Blewitt court noted that "it is well-settled that negligent inspection does not meet the requirements of § 324A(a)."  168 F. Supp. 2d at 471; see Canipe v. Nat'l Loss Control Serv. Corp., 736 F.2d 1055, 1062 (5th Cir. 1984), cert. denied, 469 U.S. 1191 (1985); Patentas, 687 F.2d at 717; Raymer v. United States, 660 F.2d 1136, 1143 (6th Cir. 1981); Davis v. Liberty Mut. Ins. Co., 525 F.2d 1204, 1207 (5th Cir. 1976).

[5] See LaFountain, 1991 U.S. Dist. LEXIS 4043 at *7; Blalock v. Syracuse Stamping Co., Inc., 584 F. Supp. 454, 456 (E.D. Pa. 1984).

They allege that Spotts, Stevens "allow[ed]" beryllium levels at the Reading Plant to rise to unsafe levels.  (Am. Compl. ¶ 65.)  However, the "critical defect is the [Plaintiffs'] inability to identify sins of commission rather than omission."  <u>Patentas</u>, 687 F.2d at 716.  That is, Plaintiffs do not allege that Spotts, Stevens (1) committed any negligent act in "allowing" beryllium concentration to rise to unsafe levels; (2) assumed or had any control over what caused the beryllium concentrations to rise to excessive levels; (3) agreed, contracted or otherwise had the responsibility to undertake any corrective action to prevent these excesses from occurring; (4) had the capability or opportunity to take any corrective action; or (5) was required by law to take any corrective action.  Instead, Plaintiffs allege that Spotts, Stevens failed to warn them about the allegedly dangerous beryllium concentration that already existed through no act (let alone negligent act) committed by Spotts, Stevens.

Our court of appeals has noted that "the language of the Restatement assumes that the injuries result in fact from the defendant's negligent performance of his or her undertaking before it reaches the issue of increased risk, which is a question of legal causation."  <u>Id.</u> at 717.  Plaintiffs' alleged injuries here did not result from Spotts, Steven's "negligent performance of [its] undertaking."  Spotts, Stevens undertook to test the beryllium emission at the plant, and report those emissions to the plant owners.  The Amended Complaint does not allege that Plaintiffs' injuries arose from Spotts, Stevens's alleged negligent testing.  Plaintiffs' injuries, as alleged in the Amended Complaint, resulted from the plant owners' alleged negligence and/or resulted from Spotts, Stevens's alleged "failure to warn."  However, as discussed above, Plaintiffs' Amended Complaint does not allege that Spotts, Stevens undertook a duty to warn the Plaintiffs, and does not plead facts that imply or infer any such duty.

With respect to subsection (b), Plaintiffs argue that Spotts, Stevens undertook to perform a duty owed by the plant owners to the Plaintiffs.  Specifically, Plaintiffs claim that Spotts, Stevens was required to do more than merely report the results of the tests it conducted to the plant owners, namely, to inform the general public about the dangerous beryllium concentrations at the Reading Plant.  However, again the Court must return to the fact that Plaintiffs have failed to allege that Spotts, Stevens agreed to take any steps beyond merely testing, sampling, monitoring, etc.  Mere knowledge of a dangerous situation does not suffice to impose liability under Section 324A(b).  See, e.g., Blewitt, 168 F. Supp. 2d at 470; Wenrick, 564 A.2d at 1248.

Finally, as to subsection (c), Plaintiffs allege detrimental reliance.  This claim also falls short because Plaintiffs have failed to allege that they suffered any harm because of their reliance upon Spotts, Stevens's "undertaking" to perform certain tests for the plant owners.

The fallacy of Plaintiffs' claim is demonstrable by way of the following hypothetical: a factory owner believes he has an asbestos problem, and hires an asbestos removal company, Asbestos Removal Inc. ("ARI"), to determine whether asbestos is present at the factory.  ARI undertakes to detect whether asbestos is present, but does not agree to take any corrective action to remove asbestos from the factory.  After ARI performs the requisite tests, it determines that asbestos is present in the factory and presents a detailed report to Owner informing him of the problem.  However, Owner declines to take any corrective action, but leases the factory to a new tenant who is unaware of the asbestos problems at the factory.  Tenant operates a business at the factory and one of its employees becomes ill.  The employee sues Tenant, Owner and ARI for damages resulting from the employee's exposure to asbestos.

In this scenario, ARI is not liable under Section 324A because ARI did not undertake to

remove asbestos from the factory, and did not negligently perform the task it did expressly undertake, i.e., testing to detect asbestos and reporting its results to Owner.  See Daraio, 309 F. Supp. 2d at 710.[6]   At all times, Owner bore direct responsibility for the presence of asbestos in the factory.  See Evans, 398 F.2d at 667 (finding that the "primary responsibility for the 'safety' of the plant of plaintiff's employer remained with" the employer, not with the employer's insurer that allegedly failed "adequately inspect" the cutting machine that harmed the plaintiff).  It was Owner's negligence in not removing the asbestos that cause the employee's injuries, and not ARI's.

The analysis is the same in this case.  Spotts, Stevens did not undertake to perform any corrective action to ensure that the level of beryllium emitted from the Reading Plant met the standards.  Instead, it only undertook to sample and test the levels of beryllium emissions, and to report that information to the plant owners, and, notably, as stated above, Plaintiffs do not allege that Spotts, Stevens was negligent in performing these tasks.  Therefore, Spotts, Stevens cannot be held liable under Section 324A for "allow[ing] the plant operators and defendants herein to

---

[6] In Daraio, the court granted summary judgment in favor of an insurance company on the plaintiff's Section 324A claims.  In that case, the plaintiff was an employee at an Owens Corning plant who sued Aetna, the plant's workers' compensation insurer.  Aetna performed certain dust studies and made recommendations to the plant's safety team.  Plaintiff alleged a cause of action under Sections 324A, alleging that Aetna had a duty to warn the plant's employees directly about the levels of asbestos found in the dust studies rather than only report its findings to the plant's safety team. Plaintiffs also argued that based on its findings, Aetna's duties included making sure that its recommendations were adopted by the plant safety team.

The Court stated that a prerequisite for a 324A action is that the defendant must have negligently performed the undertaking at issue.  However, in that case, Aetna's "undertakings" were the dust studies and recommendations made to the plant's safety team.  The court held that Aetna never assumed the "undertaking" of warning the plant employees directly about the dangerous levels of asbestos dust found in the air at the plant.  Instead, the court noted that creating a safe work environment remained the responsibility of Owens Corning.  Accordingly, the court held that Aetna had no liability under Section 324A.

continue to pollute and contaminate the air thereby exposing plaintifs and the class to the

poisonouse, toxic, and/or hazardous effects of beryllium . . . ."  (Compl. ¶ 66.)  Plaintiffs allege

that Spotts, Stevens was negligent in performing a task that it never agreed to (and did not)

undertake.  Section 324 does not impose liability under those circumstances.

The Amended Complaint does not allege that Spotts, Stevens undertook the duty to warn

residents of communities surrounding the Reading Plant of the results of the testing Spotts,

Stevens performed for the defendant plant owners.  It does not allege that Spotts, Stevens

performed its testing obligations, i.e., its express undertaking, negligently.  The Amended

Complaint does not allege that Spotts, Stevens violated any duty arising under a specific state or

federal statute or regulation.[7]  It does not allege that Spotts, Stevens undertook a duty to take any

corrective action on behalf of the plant owners to correct or reduce beryllium emissions at the

Reading Plant in the event that such emissions exceeded certain levels permitted by law.

The Court dismissed Plaintiffs' initial Complaint because it failed, on its face, to allege

facts that created a legal duty running from Spotts, Stevens to the Plaintiffs.  Plaintiffs' Amended

Complaint must suffer an identical fate.  Plaintiffs amended their Complaint and cited the

language of Section 324A of the Restatement (Second) of Torts.  However, Plaintiffs' Amended

Complaint still fails to allege that Spotts, Stevens breached a duty that it expressly undertook to

---

[7] Plaintiffs emphasize that the EPA's regulations addressing beryllium emissions were promulgated expressly to protect the public.  However, Plaintiffs have not pointed to any EPA regulation (or any other regulation) providing that an engineering consulting firm that provides a service for a beryllium-emitting plant owes a legal duty to the neighboring residents of that plant. Moreover, the Amended Complaint does not specifically refer to any state or federal regulation.

perform.[8]

Plaintiffs essentially are advancing the proposition that Spotts, Stevens owes a "social duty" to them, and to the public at large.  However, in dismissing Plaintiffs' Amended Complaint as to Spotts, Stevens, the Court's ruling is consistent with state courts in Pennsylvania,  federal courts in this District, and the Third Circuit Court of Appeals, all of which have adhered to the principle that "the scope of a good samaritan's duty is measured by the scope of his or her undertaking." Patentas, 687 F.2d at 716.  The case law cited above makes clear that Section 324A does not impose any "social," "implied" or "derivative" duty.  Rather, Section 324A imposes liability, reaching to third persons, upon a party's breach of a specifically undertaken duty.  If a defendant did not undertake to perform a specified task, it cannot be held liable under Section 324A for failing to perform that task.  Accordingly, Spotts, Stevens's motion to dismiss will be granted.

## II.    CABOT CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS

Cabot has moved for judgment on the pleadings, arguing that lead Plaintiff and class representative Shirley Sheridan's claims against Cabot are barred by the doctrine of res judicata,

---

[8] Counsel for both Spotts, Stevens and the Plaintffs admitted at oral argument that a considerable amount of discovery in this case had already been conducted.  Therefore, if Plaintiffs could have alleged, in good faith, that Spotts, Stevens undertook a duty to warn the Plaintiffs in this case, then Plaintiffs should have done so.  That they did not do so cannot go unremarked upon.

Plaintiffs argue that, at the Rule 12(b)(6) phase, it has adequately alleged a prima facie claim under Section 324A, and that it should be able to demonstrate that Spotts, Stevens "knew that it was undertaking a testing contract that was specifically there to ensure the safety of the public and that, in the discharge of that obligation, that it didn't do so in a reasonable way." (Hearing Tr. 17:21-18:1, March 25, 2008.)

However, the Court finds that Plaintiffs failed to allege that Spotts, Stevens breached a duty that it undertook to perform.  This finding ends the Court's analysis under Section 324A as Plaintiffs are not entitled to discovery to prove a claim that they failed to properly allege.

or "claim preclusion."  Specifically, Cabot argues that Ms. Sheridan asserted negligence claims based on the same beryllium emissions from the Reading Plant in a prior law suit against Cabot, and, accordingly, that she is barred from bringing claims based on these emissions against Cabot here.

The affirmative defense of <u>res judicata</u>, or claim preclusion, requires that the party asserting such a bar bear the burden of showing that it applies.  <u>United States v. Athlone Indus., Inc.</u>, 746 F.2d 977, 983 (3d Cir. 1984); <u>Davis v. U.S. Steel Supply</u>, 688 F.2d 166 (3d Cir. 1982)(en banc).  The purpose of claim preclusion is to avoid piecemeal litigation of claims arising from the same events.  <u>Churchill v. Star Enters.</u>, 183 F.3d 184, 194 (3d Cir. 1999); <u>Bd. of Trustees v. Centra</u>, 983 F.2d 495, 504 (3d Cir. 1992). "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>Rivet v. Regions Bank of La.</u>, 522 U.S. 470, 473 (1998) (internal citation omitted).

Claim preclusion gives dispositive effect to a prior judgment if "'a particular issue, although not litigated, could have been raised in the earlier proceeding.'" <u>Churchill</u>, 183 F.3d at 194.  (citing <u>Athlone</u>, 746 F.2d at 984).  Claim preclusion requires: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action.  <u>Id.</u> (citing <u>Athlone</u>, 746 F.2d at 984).  "Courts should not apply this conceptual test mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out the same occurrence in a single suit." <u>Id.</u>

17

(quoting Athlone, 746 F.2d at 984).[9]  A determination of whether two lawsuits are based on the same cause of action "turns on the essential similarity of the underlying events giving rise to the various legal claims."  Centra, 983 F.2d at 504 (quoting Athlone, 746 F.2d 977, 983 (3d Cir. 1984).  Courts take a "broad view" of what constitutes the same "causes of action" for claim preclusion purposes, focusing on the underlying events of the two actions."  Churchill, 183 F.3d at 194 (citing Athlone, 746 F.2d at 984).

In 2002, Ms. Sheridan asserted claims against Cabot in an action in federal court in this District ("Sheridan I"), alleging that her exposure to beryllium emissions from the Reading Plaint caused her to contract chronic beryllium disease.  Ms. Sheridan sought compensatory and punitive damages in excess of $150,000.  Sheridan I was not a class action.  In March 2003, the district court granted Cabot's motion for summary judgment, finding that Ms. Sheridan had not suffered a compensable injury.  Sheridan v. Cabot Corp. ("Sheridan I"), No. 02-1212, 2003 U.S. Dist. LEXIS 4564, at *12 (E.D. Pa. Mar. 12, 2003).  The Third Circuit Court of Appeals affirmed.  Sheridan v. Cabot Corp., 113 Fed. App'x 444, 445 (3d Cir. 2004) (unpublished).

Two years after her unsuccessful appeal, Ms. Sheridan, as one of two lead plaintiffs and purported class representatives, initiated this class action lawsuit ("Sheridan II") against Cabot,

_____

[9] Claim preclusion and issue preclusion are "related, but distinct, concepts."  Hofmann v. Pressman Toy Corp., 193 Fed. App'x 121, 123 (3d Cir. 2006) (nonprecedential).  Claim preclusion prevents a party from re-litigating claims she might have but did not assert in the first action, while issue preclusion forecloses only a matter actually litigated and essential to the decision.  Id. (citing Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988).  Both claim and issue preclusion serve the same policy goals of conservation of judicial resources, fostering reliance on judicial action, and avoidance of the expense and vexation accompanying multiple lawsuits.  Id. at 122-23 (citing E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 492 (3d Cir. 1990); Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991) (noting that issue preclusion promotes the policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.")

among other defendants, for "medical monitoring."  While <u>Sheridan I</u> was a personal injury suit in which Ms. Sheridan asserted claims of strict liability and negligence, the class action complaint in <u>Sheridan II</u> only asserts medical monitoring claims.

Cabot argues that all three prongs of the claim preclusion analysis cited above are met because (a) Cabot obtained a judgment on the merits against Ms. Sheridan at the summary judgment phase in <u>Sheridan I</u>; (b) Ms. Sheridan and Cabot are parties to both actions; and (c) <u>Sheridan II</u> is based on the same essential cause of action as <u>Sheridan I</u>.  The Court will consider each <u>res judicata</u> requirement, and the parties' arguments related to each requirement, in turn.

## A.    Whether <u>Sheridan I</u> Constitutes a Final Judgment on the Merits

In <u>Sheridan I</u>, the district court found that Ms. Sheridan had "not yet suffered any 'compensable' injury under Pennsylvania law," relying on the Pennsylvania Supreme Court's decision in <u>Simmons v. Pacor, Inc.</u>, 543 Pa. 664, 674 A.2d 232 (Pa. 1996), and, accordingly, the <u>Sheridan I</u> court granted summary judgment in favor of Cabot and against Ms. Sheridan. <u>Sheridan I</u>, 2003 U.S. Dist. LEXIS 4564, at *12.  The court stated, "[w]hether [Ms. Sheridan's] chronic beryllium disease will ever develop into a compensable injury remains to be seen."  <u>Id.</u> Declining to reach Cabot's argument that Ms. Sheridan's claims were barred by the applicable statute of limitations, the court noted that because Ms. Sheridan had not suffered a compensable injury at that point, "the limitations period [had] not begun to run, much less expired."  <u>Id.</u> at *12 n.2.

Cabot correctly notes that summary judgment typically operates as a judgment on the merits, and argues that the <u>Sheridan I</u> court's ruling in this case was a disposition "on the merits" for purposes of claim preclusion.  Meanwhile, Ms. Sheridan argues that in finding that she did

not suffer from a "compensable" injury, the <u>Sheridan I</u> court did not reach the merits of her case, and, therefore, the decision was not "on the merits" for purposes of applying this doctrine. Ms. Sheridan relies on the Restatement (Second) of Judgments, which, in part, states:

> A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition of suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law.

Restatement (Second) of Judgments § 20(2) (1982). Ms. Sheridan argues that the <u>Sheridan I</u> court found her claim to be "premature," so that under this section of the Restatement she is permitted to bring this second claim. Ms. Sheridan essentially is arguing that "injury," in the context of a personal injury tort claim, is a procedural precondition, similar to jurisdiction, venue or improper joinder.[10]

In response, Cabot argues that "injury" is an element of a personal injury claim in Pennsylvania, and not a mere "precondition" to filing suit. The Court agrees. The analysis as to whether a plaintiff has suffered "compensable injury" involves inquiring whether injury has been established that merits awarding damages. This inquiry is at the heart of a personal injury action, and a ruling, such as in <u>Sheridan I</u>, that a plaintiff has not suffered a "compensable injury," is a decision on the merits for <u>res judicata</u> purposes.

Ms. Sheridan points to the language in the <u>Sheridan I</u> opinion where the court stated that her personal injury claim had not yet ripened and suggested that if her claim were to ripen, i.e,

---

[10] Ms. Sheridan cites no helpful cases in support of this position. The only cases Ms. Sheridan cited in her brief and during oral argument stand for the unremarkable proposition that dismissal of a prior suit for lack of jurisdiction does not bar a second suit in a court that does possess jurisdiction.

should Ms. Sheridan begin to suffer from a "compensable injury" at some point, she could properly initiate a second personal injury action at that time.  However, to the extent this argument applies, it applies does not apply to the claims asserted in <u>Sheridan II</u> because <u>Sheridan II</u> is not a personal injury action.  The fundamental flaw in Ms. Sheridan's argument is that <u>Sheridan II</u>, the second action, was **not** brought after Ms. Sheridan's <u>personal injury</u> claim had "matured" or "ripened."  At this time, her personal injury claim has **not** matured, i.e., she has not alleged that she has contracted and now suffers from a compensable injury.  Ms. Sheridan is simply bringing another, different claim for medical monitoring based on the same factual allegations.  Therefore, Restatement (Second) of Judgments § 20(2) does not apply, and Ms. Sheridan has not offered any other reason why the Court should find that the <u>Sheridan I</u> court's judgment should not constitute a judgment "on the merits."[11]

### B.   Whether <u>Sheridan II</u> Involves the Same Parties

Cabot argues that <u>Sheridan I</u> and <u>II</u> involve the same parties.  Cabot correctly notes that it and Ms. Sheridan were and are parties in both lawsuits.  In <u>Sheridan I</u>, Cabot and Ms. Sheridan were the only parties, while <u>Sheridan II</u> is a putative class action where Ms. Sheridan purports to

---

[11] The <u>Sheridan I</u> court was simply leaving open the option, which is recognized under Pennsylvania law as the "two-disease" rule, that if and when Ms. Sheridan's symptoms progress and she begins to develop an impairment, she is not foreclosed from bringing a personal injury action at that time.  In <u>Marinari v. Asbestos Corp., Ltd.</u>, 417 Pa. Super. 440, 612 A.2d 1021 (Pa. Super. 1992), while the court concluded that the statute of limitations for filing claims based on a previous injury had expired, the court held that the plaintiffs were not precluded from subsequently commencing an action for an asbestos-related injuries if and when symptoms develop and physiological impairment begins.  The logic behind this rule is that a plaintiff should not be barred from raising a second claim if a new harm develops.  A new statute of limitations begins to run when the new, second injury is discovered.  The Pennsylvania Supreme Court has applied and reaffirmed the "two-disease" rule multiple times.  <u>See</u>, <u>e.g.</u>, <u>Zieber v. Bogert</u>, 565 Pa. 376, 383 (Pa. 2001); <u>Simmons</u>, 674 A.2d at 237.

represent herself and an entire class of plaintiffs who have sued Cabot and others.  In response, Ms. Sheridan argues, without citation to any authority, that the existence of additional parties in Sheridan II – lead plaintiff Mr. Zimmerman and defendants NGK Metals and Spotts, Stevens – defeats the "same parties" requirement of the claim preclusion doctrine.

Ms. Sheridan's argument is unavailing.  Claim preclusion does not require that all parties to both actions are identical.  Instead, the doctrine only requires that the parties against which preclusion is sought are the same.  Under Pennsylvania law, res judicata only binds the parties that participated in the prior litigation.  AMTRAK v. Pa. PUC, 342 F.3d 242, 256 (3d Cir. 2003); see also Greater N. Am. Funding Corp. v. Tara Enters., Inc., 2002 PA Super 399, 814 A.2d 258, 261 (Pa. Super. Ct. 2002) ("[A] final judgment on the merits by a court of competent jurisdiction will prevent any relitigation of issues that involve the same parties and the same cause of action"); Witkowski v. Welch, 173 F.3d 192, 199 (3d Cir. 1999) (Pennsylvania preclusion law requires that the party against whom preclusion is sought must have been party to the prior adjudication).  Addition of new parties, whether they are plaintiffs or defendants, does not negate the res judicata effect of the prior litigation.  See Sims v. Mack Trucks, Inc., 463 F. Supp. 1068, 1069 n.1 (E.D. Pa. 1979) ("The addition of new plaintiffs to the later complaint does not, however, prevent the application of Res judicata to those plaintiffs who were parties to the prior litigation.") (citing Adams v. ABA, 400 F. Supp. 219, 226 (E.D. Pa. 1975)).  If that was the case, a plaintiff could circumvent the claim preclusion doctrine altogether simply by joining another plaintiff or defendant to the action.  The Court finds that the parties to both lawsuits are the same,

and Ms. Sheridan's argument here are misplaced.[12]

### C.   Whether <u>Sheridan II</u> is Based on the Same "Cause of Action"

Cabot argues that Ms. Sheridan's claims in <u>Sheridan I</u> and <u>II</u> arose from the same events, facts and circumstances, and, accordingly, that both suits involved the same "cause of action" for <u>res judicata</u> purposes.   In response, Ms. Sheridan argues that personal injury claims, on the one hand, and medical monitoring claims, on the other, are different claims that require different burdens of proof, and do not encompass the same "cause of action."

The Third Circuit Court of Appeals has articulated various factors to determine when two law suits involve the same cause of action, i.e, whether they encompass "an essential similarity of the underlying events."  <u>See Athlone</u>, 746 F.2d at 984.  These factors may include the following: (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.  <u>Id.</u>  Significantly, the court of appeals noted that it is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions.  <u>Id.</u> (<u>citing</u> Clemens v. Central R.R. Co., 399 F.2d 825, 828 (3d Cir. 1968).  However, the court of appeals acknowledged that the "focal points" of this analysis "are whether the acts complained of were the same, whether the material

---

[12] In this case, Cabot seeks to preclude Ms. Sheridan's claims against it; it does not seek to preclude her from bringing claims against the other defendants.  Similarly, Cabot seeks to preclude only Ms. Sheridan from bringing claims; it does not seek to preclude Mr. Zimmerman from bringing claims against it on the basis of <u>res judicata</u>.

facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same."  Id.

In this case, the medical monitoring claims asserted in Sheridan II are different in form than the negligence and strict liability claims alleged in Sheridan I.  Specifically, Ms. Sheridan argues that "alleged harm" and the "relief" sought are different.  In support of her position, Ms. Sheridan cites the different burdens of proof applicable to each of her respective claims.  She argues that to prevail in Sheridan I, she "would have had to produce medical testimony that the emissions were responsible for causing her [chronic beryllium disease], whereas in the present class action the putative class needs only show that the emissions have created an increased risk of contracting a latent disease."  (Pl. Mem. Opp'n 8.)  Certainly, Ms. Sheridan's claims and her burden of proof as to her respective claims are different, but Ms. Sheridan cannot escape the fact that the events giving rise to the causes of action alleged in both lawsuits are identical.  In fact, Ms. Sheridan appears to concede that the "acts complained of," the "material facts alleged in each suit," and the "witnesses and documentation required to prove such allegations" in Sheridan I and Sheridan II are identical.  Ms. Sheridan states that "[i]t is admittedly true that the beryllium emissions are one and the same in each case, and were certainly produced by the same operation."  (Pl. Mem. Opp'n 8.)

Secondly, Cabot argues that Ms. Sheridan could have brought, but failed to bring, a medical monitoring claim in Sheridan I.  However, during oral argument, Ms. Sheridan's counsel disagreed.  Counsel argued that Ms. Sheridan initiated Sheridan I because she thought she was injured, and that she did not know that she actually was not injured (stated differently, she did not suffer a compensable injury) until the Sheridan I ruling.  Only when the Sheridan I court found

24

that she had not suffered a compensable injury, did it then seem plausible (and, accordingly to Ms. Sheridan's counsel, legally possible) to pursue a medical monitoring claim.  In addition, Ms. Sheridan's counsel argued that she could not have brought her medical monitoring claim in Sheridan I because in that case she sought a full panoply of damages, including future medical expenses, and, "[t]herefore, what is essentially medical monitoring, which is the cost of testing going forward into the future, was subsumed within her personal-injury claim."  (Hearing Tr. 39:5-7, Mar. 25, 2008.)

As an initial matter, the Court notes that Rule 18(a) of the Federal Rules of Civil Procedure permits a party asserting a claim to "join, as independent or alternative claims, as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  There is no doubt that Ms. Sheridan indeed could have asserted a medical monitoring claim as an alternative claim in Sheridan I.

The parties did not cite, and the Court has not found, any reported case in which a court has held that res judicata bars a plaintiff from bringing a medical monitoring claim if she has already litigated a personal injury claim arising from the same event, or where a court has declined to apply the res judicata doctrine to bar a subsequent  medical monitoring claim under those circumstances.  However, at least two courts in Pennsylvania, including the Sheridan I court, acknowledged that those claims may (and, perhaps, should) be brought in the same law suit.  In Simmons, the case in which the Pennsylvania Supreme Court first recognized a cause of action for medical monitoring under Pennsylvania law, the court held that the plaintiffs' injuries did not give rise to a cause of action for the damages requested by the plaintiffs, but opined that to allow recovery for medical monitoring would be "appropriate and just."  Simmons, 674 A.2d

25

at 678-80.  However, inasmuch as the plaintiffs in that case did not assert a medical monitoring claim, the court found that the plaintiffs were not entitled to that relief.  The court stated that "[u]nfortunately, although Appellants' experts have recommended medical monitoring of the disease, Appellants have not sought relief upon those grounds and are therefore not entitled to such expenses."  Id. at 680.[13]

In Sheridan I, the district court also noted, in the context of discussing what injuries are compensable, that although the Simmons court recognized the feasibility of a claim for damages for medical monitoring under Pennsylvania law, Ms. Sheridan did not allege a medical monitoring claim.  Sheridan I, 2003 U.S. Dist. LEXIS 4564, at *8 & n.1.  Sheridan I fairly could be understood to highlight that the court would have considered Ms. Sheridan's medical monitoring claims at that time had she raised them.

It is both logical and prudent to require a plaintiff to sue for personal injury and medical monitoring as alternative claims in the same lawsuit.   If a plaintiff brings only a personal injury claim, but loses because the court finds that the plaintiff does not suffer from a "compensable injury" – as the Sheridan I court found – then the plaintiff could immediately initiate yet another law suit to assert a medical monitoring claim – as Ms. Sheridan has done here.  As a matter of judicial economy, res judicata should serve to bar the second suit for medical monitoring because all of the principles underlying the claim preclusion doctrine, in particular, the avoidance of piecemeal litigation, are implicated clearly.  No facts or circumstances changed between the time Ms. Sheridan brought her initial personal injury suit and the time she brought the second suit for

---

[13] In Simmons, the plaintiffs expressly stated in their reply brief before the Pennsylvania Supreme Court that they "[did] not seek a holding by the court that they may recover medical monitoring costs."  674 A.2d at 680 n.12 (citation omitted).

medical monitoring, except that she received an unfavorable decision in <u>Sheridan I</u>.  The acts

complained of, the material facts alleged in each suit, and the witnesses and documentation

required to prove the allegations in each suit are identical.  Ms. Sheridan could have asserted a

personal injury claim in <u>Sheridan I</u> and, in the alternative, she could have pleaded a medical

monitoring claim at that time.  If her personal injury claim was successful, her medical

monitoring claim would have fallen by the wayside (assuming the court awarded Ms. Sheridan

damages for future medical treatment).  However, if Ms. Sheridan's personal injury claim was

unsuccessful, which it turned out to be, she properly could have pursued (and potentially could

have prevailed on) her alternative medical monitoring claim at that time.  If, after prevailing on a

medical monitoring claim, the regular medical surveillance should detect a disease, under

Pennsylvania's "two disease rule" she properly could assert a personal injury claim once the

"second" disease manifests itself.  That sequence of events properly serves the purpose

underlying a medical monitoring cause of action, i.e., "early diagnosis and treatment of disease or

illness resulting from exposure to toxic substances caused by a tortfeasor's negligence," <u>Hansen

v. Mountain Fuel Supply Co.</u>, 858 P.2d 970, 976-77 (Utah 1993), and, had she followed that

sequence, Ms. Sheridan would have had the resources to seek treatment should any symptoms

develop.

 For these reasons, the Court finds that all three requirements of <u>res judicata</u> have been

met.  Because Ms. Sheridan asserts claims against Cabot here that could have been raised in

<u>Sheridan I</u>, those claims are barred now by the doctrine of <u>res judicata</u>.  Accordingly, Cabot's

motion for judgment on the pleadings is granted.

**CONCLUSION**

For the reasons discussed above, the Court finds that Plaintiffs' Amended Class Action Complaint fails to allege that Spotts, Stevens owed a duty to the Plaintiffs, and therefore, fails to state a claim for negligence against Spotts, Stevens.   Accordingly, Spotts, Stevens's Motion to Dismiss Plaintiffs' Amended Class Action Complaint will be granted.

In addition, the Court finds that Plaintiff Shirley Sheridan's claims against Cabot Corporation in this law suit are barred by the doctrine of <u>res judicata</u>.  Therefore, Cabot Corporation's Motion for Judgment on the Pleadings will be granted.

An Order consistent with this Memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHIRLEY SHERIDAN et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **NGK NORTH AMERICA, INC. et al.,** | : | |
| **Defendants** | : | **No. 06-5510** |

**O R D E R**

  **AND NOW**, this 21st day of May, 2008, upon consideration of Spotts, Stevens &
McCoy, Inc.'s Motion Dismiss Plaintiffs' Amended Class Action Complaint (Docket No. 76),
the Plaintiffs' response thereto (Docket No. 81), Cabot Corporation's Motion for Judgment on
the Pleadings (Docket No. 80), Plaintiffs' response thereto (Docket No. 84), Cabot Corporation's
reply brief (Docket No. 85), Plaintiffs' surreply brief (Docket No. 90), and following oral
argument on these motions on March 25, 2008, **IT IS ORDERED** that:

1. Spotts, Stevens & McCoy, Inc.'s Motion Dismiss Plaintiffs' Amended Class Action
  Complaint (Docket No. 76) is **GRANTED**, and the Plaintiffs' Amended Class Action
  Complaint is **DISMISSED** as to defendant Spotts, Stevens & McCoy, Inc.  The Clerk of
  Court shall terminate Spotts, Stevens & McCoy, Inc. as a defendant in this action.

2. Cabot Corporation's Motion for Judgment on the Pleadings (Docket No. 80) is
  **GRANTED**.  The Clerk of Court shall enter a Judgment in favor of Cabot Corporation
  and against Plaintiff Shirley Sheridan.  Plaintiff James Zimmerman's claims against
  Cabot Corporation remain pending in this action.

**IT IS FURTHER ORDERED** that Cabot Corporation's Motion to Compel (Docket No.

87), and Plaintiffs' Cross Motion for Limiting Order (Docket No. 89) are **MOOT**.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

2